**IT IS ORDERED as set forth below:**

**Date: May 11, 2020**

_____

**Jeffery W. Cavender
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 20-63764-JWC |
| JAMES FRANKLIN COOK, JR., | CHAPTER 11 |
| Debtor, | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Motion for Order Under § 362(c)(4)(a)(ii) Confirming that No Automatic Stay is in Effect (the "Motion to Confirm") (Doc. No. 6) filed by Select Portfolio Servicing, Inc. as Servicer for Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS17 ("SPS") and the Emergency Motion to Impose Stay (Doc. No. 11) (the "Motion to Impose," together with the Motion to Confirm, the "Motions") filed by Debtor James Franklin Cook, Jr. (the "Debtor"). SPS seeks an order confirming that no automatic stay is in effect in this

1

case by virtue of Debtor's two previously dismissed bankruptcy cases pending within a year of the filing of the current case. Debtor's Motion to Impose seeks imposition of the automatic stay as to all creditors in his current bankruptcy case. For the reasons set forth below, the Motion to Confirm will be granted and the Motion to Impose will be granted in part and denied in part.

## JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The issues raised in the Motions are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O). Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## BACKGROUND INFORMATION

SPS filed its Motion to Confirm on March 3, 2020 seeking confirmation that no automatic stay was in place in this case by virtue of Debtor's two previous dismissed cases pending within the last year. The next day Debtor filed his Motion to Impose, a motion for expedited hearing on the same (Doc. No. 12), and a response in opposition to the Motion to Confirm (Doc. No. 13). SPS filed a response in opposition to the Motion to Impose on March 16, 2020 (Doc. No. 25).

The Court conducted a telephonic status conference on Debtor's motion for expedited hearing on March 4, 2020. During the status conference counsel for SPS confirmed that it conducted a foreclosure sale with respect to Debtor's residence on March 3, 2020, and that the property was sold to the lender pursuant to a credit bid. SPS confirmed that no deed under power had been recorded with respect to the foreclosure sale and agreed that no deed would be recorded with respect to the sale until the Court ruled on the pending Motions.

The Court conducted a telephonic hearing on the Motions on March 26, 2020 (the

"Hearing") at which counsel for SPS, counsel for Debtor, and Debtor appeared.[1] At the Hearing, SPS asserted that, although the foreclosure sale occurred after the filing of the current bankruptcy case, no stay was in effect pursuant to 11 U.S.C. § 362(c)(4)(A)(i).[2] Because Debtor had two prior cases pending within the year preceding the instant case, SPS argued that § 362(c)(4)(A)(i) applies and that no stay was in effect as to Debtor or Debtor's interest in any property at the time of the foreclosure. SPS further argued that even if a stay were imposed, as requested by Debtor, the stay would be effective as of the date of the order imposing the stay pursuant to 11 U.S.C. § 362(c)(4)(C) and would not alter the transfer of title effectuated by the concluded foreclosure sale.

In opposition to the Motion to Confirm, Debtor countered that § 362(c)(4)(A)(i) does not apply in this case, that Debtor's interest in the property is property of the bankruptcy estate, and that this Court may impose the stay retroactively to the commencement of the case pursuant to 11 U.S.C. § 105(a). Debtor argued that § 362(c)(4)(A)(i) should not apply in the current case for two reasons. First, Debtor argued that § 362(c)(4)(A)(i) does not apply because the case was filed in good faith. Second, Debtor argued that § 362(c)(4)(A)(i) should not apply because the current case was filed more than a year after his first case. Debtor claimed that 11 U.S.C. § 362(c)(3) is the applicable statute instead, because only Debtor's second case was filed in the preceding year.

Relying on § 362(c)(3), Debtor contends that his interest in his property became property of his bankruptcy estate as of the commencement of this case. Debtor argued that the stay under

---

[1] The hearing was conducted telephonically as a result of the ongoing COVID-19 pandemic. During the hearing, the Court asked the parties whether any evidentiary issues existed that they were unable to address given that the hearing was being conducted telephonically. Both parties indicated no issues required an in-person evidentiary hearing to be scheduled by the Court.

[2] All statutory references herein are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise specified.

3

§ 362(c)(3) expires after thirty days as to property of the debtor, but not as to property of the bankruptcy estate. Accordingly, Debtor asked the Court to find that Debtor's interest in the property is and was held by the bankruptcy estate and subject to the stay as of the filing of the petition.

Finally, Debtor contended that even if § 362(c)(4)(A)(i) is the applicable statute, this Court may impose the stay retroactively to the filing date of the petition. Under the circumstances of this case, Debtor argued that this Court may impose the stay under its equitable powers under § 105(a) and declare the foreclosure void. When pressed by the Court, counsel for Debtor could not cite to any authority or articulate any instance of a court adopting that approach but maintained that § 105(a) grants this Court wide authority to exercise such discretion. At the conclusion of the Hearing, the Court took the matter under advisement. The following constitutes the Court's findings of fact and conclusions of law in resolution of both Motions pursuant to Fed. R. Bankr. P. 9014(c) and 7052.

## FINDINGS OF FACT[3]

Debtor filed for relief under chapter 11 of the Bankruptcy Code on March 2, 2020 (the "Petition Date"). This case represents Debtor's third case pending within the last year (the "Third Case"). Debtor initially filed a petition for relief under chapter 13 of the Bankruptcy Code on February 4, 2019, case number 19-51886-jwc (the "First Case"). Debtor failed to attend the 341 Meeting of Creditors in the First Case, and the chapter 13 Trustee raised objections that the amount of Debtor's secured indebtedness rendered him ineligible for relief under chapter 13 pursuant to 11 U.S.C. § 109(e). The First Case was subsequently dismissed by order entered on May 16, 2019 when Debtor failed to convert the case to one under chapter 11. On August

---

[3] The Court makes these findings of fact from a review of the Court's docket, pleadings on file and exhibits thereto, and the limited proffers made by counsel at the Hearing.

4

5, 2019, Debtor filed a second petition for relief under chapter 13 of the Bankruptcy Code, case number 19-62166-jwc (the "Second Case"). Debtor failed to file the required schedules and statement of financial affairs in the Second Case even after the Court granted an additional two weeks to comply, and the Second Case was subsequently dismissed on September 10, 2019 for Debtor's failure to timely correct filing deficiencies. Debtor commenced this Third Case on the eve of a foreclosure sale being conducted with respect to Debtor's personal residence located at 260 Cameron Ridge Drive, Sandy Springs, Georgia 30328 (the "Property").

SPS is the servicer of a loan originally made by SunTrust Mortgage, Inc. on August 3, 2006 in the original principal amount of $601,200.00. The loan was secured by a Security Deed of the same date executed by Debtor and Deborah L. Cook and recorded in the real property records of Fulton County, Georgia at Deed Book 4333, Page 589 (the "Security Deed"). The loan and Security Deed were subsequently assigned to Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS17 ("Lender"). Lender by virtue of the Security Deed held a valid and perfected first-priority security deed on the Property as of the filing of the Third Case.

On March 3, 2020, the day after the Third Case was filed, Lender conducted a foreclosure sale with respect to the Property pursuant to the power of sale contained in the Security Deed. Lender purchased the Property at the foreclosure sale pursuant to a credit bid in the amount of $700,955.78. A Memorandum of Foreclosure Sale evidencing the credit bid and sale was executed at the foreclosure sale. *See* Doc. No. 25, Ex. A.

Prior to the commencement of his Third Case, Debtor experienced a series of significant changes in his financial circumstances including, but not limited to, changes in employment, significant decreases in compensation, soaring health insurance costs, and significant medical

5

expenditures, primarily related to his wife's ongoing medical condition. Unlike the previous two cases, this Third Case was filed under chapter 11 and Debtor timely completed all schedules and information disclosures required under the Bankruptcy Code. With his health insurance costs now under control, Debtor employed a real estate agent in the case to sell unencumbered property to repay his creditors. Debtor anticipates filing a plan of reorganization within forty-five days. On these facts the Court is tasked with determining: (i) whether any stay went into effect upon the commencement of the Third Case; (ii) whether the foreclosure sale conducted the day after the commencement of the Third Case terminated any rights of Debtor and/or the bankruptcy estate in the Property; (iii) whether imposition of a stay is appropriate in this case; and (iv) if imposition of a stay is appropriate, whether such imposition would in any way alter the results of the foreclosure sale.

## **CONCLUSIONS OF LAW**

### (A) No Stay Went Into Effect Upon Commencement of the Third Case

SPS's Motion to Confirm seeks confirmation pursuant to § 362(c)(4)(A)(ii) that no automatic stay was in place at the time it conducted the foreclosure sale on March 3, 2020, the day after Debtor commenced his Third Case. Section 362(c)(4)(A) provides:

> (i) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were *pending within the previous year* but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and
>
> (ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect[.]

11 U.S.C. § 362(c)(4)(A) (emphasis added). The record before the Court clearly establishes that Debtor had two cases pending within the previous year, neither of which was dismissed

6

under § 707(b).  Based on those incontrovertible facts, and application of the unambiguous language of § 362(c)(4)(A)(i), the automatic stay under § 362(a) did not go into effect upon the commencement of the Third Case and was not in effect at the time SPS conducted the foreclosure sale with respect to the Property.[4]

At the Hearing, Debtor argued that § 362(c)(4)(A)(i) does not apply because the Third Case was filed more than a year after the First Case was filed.  As the statute makes clear, however, the question is not whether the prior cases were *filed* within the previous year, but whether the cases were *pending* within the previous year.[5]  The First Case and Second Case were dismissed May 16, 2019 and September 10, 2019, respectively.  The Third Case was filed on March 2, 2020.  As this Court's records reflect, the First Case and Second Case were pending within the year prior to the Petition Date, and, as a result, § 362(c)(4)(A)(i) applies.  Pursuant to § 362(c)(4)(A)(ii), SPS is entitled to an order confirming that no stay went into effect as of the commencement of the Third Case, and its Motion to Confirm will be granted.

Debtor also argues that even if § 362(c)(4)(A)(i) is applicable, as this Court concludes above, the stay expires only as to the Debtor and not as to property of the estate.  Debtor's arguments on this point miss the mark.  The only cases Debtor cites, *In re Ajaka*, 370 B.R. 426 (Bankr. N.D. Ga. 2007) and *Abernathy, LLC v. Smith*, Case No. 1:13-CV-03801-RWS, 2014 WL 4925654 (N.D. Ga. Sept. 30, 2014), are both cases applying § 362(c)(3), which is not the applicable code provision at issue in this case.  Both cases involved debtors who had only one

---

[4] *See In re Nelson*, 391 B.R. 437, 453 (B.A.P. 9th Cir. 2008) ("Section 362(c)(4)(A)(i) unambiguously specifies that 'the stay under [§ 362(a)] shall not go into effect upon the filing of the [third] case.'"); *see also Miley v. Thornburg Mortg. Home Loans, Inc.*, Case No. 14-CV-02819-CC-JCF, 2014 WL 11485571 (N.D. Ga. Sept. 9, 2014), *aff'd per curiam*, 613 F. App'x 915 (11th Cir. 2015) (finding the language of § 362(c)(4)(A)(i) unambiguous).

[5] *In re Benefield*, 438 B.R. 706, 709 (Bankr. D.N.M. 2010) (holding that the stay does not come into effect automatically if two or more single or joint cases of the debtor were *pending* within the previous year but were dismissed) (emphasis added).

7

prior case pending within a year of the petition, and the courts there grappled with the thorny issue under § 362(c)(3) of whether the expiration of the 30-day stay applicable in such cases terminates solely as to the Debtor or as to all property of the estate.[6]  The Court need not tackle that issue because § 362(c)(3) has no applicability to this case.  Unlike in cases falling under § 362(c)(3), no automatic stay goes into effect in a case where § 362(c)(4)(A)(i) applies, and no stay was in effect at the time SPS conducted the foreclosure sale.[7]

### (B) Imposition of the Automatic Stay

Notwithstanding the fact that no automatic stay went into effect upon the commencement of the Third Case, the question remains whether the Court should nonetheless impose the stay pursuant to § 362(c)(4)(B).  That section allows a party in interest to petition the court within 30 days after the filing of the current case to impose the stay.  Debtor bears the burden of establishing by clear and convincing evidence that the case was filed in good faith.  11 U.S.C. § 362(c)(4)(D).  Based upon the proffer of Debtor's counsel at the hearing, which proffer was uncontested by SPS, the Court finds that Debtor established by clear and convincing evidence that the case was filed in good faith.[8]  Unlike his prior two bankruptcy cases, Debtor timely completed all required disclosures, engaged a broker to sell unencumbered property for the

---

[6] Two conflicting approaches exist interpreting the language in § 362(c)(3) that the stay "shall terminate with respect to the debtor on the 30th day after the filing of the later case…."  *Compare In re Smith*, 910 F.3d 576, 578 (1st Cir. 2018) (holding that § 362(c)(3)(A) terminates the entire stay); *with Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 230 (5th Cir. 2019) (holding that § 362(c)(3)(A) terminates the stay only with respect to the debtor; it does not terminate the stay with respect to property of the bankruptcy estate), *appeal docketed*, Case No. 19-1035. Unlike the language of § 362(c)(3), the language in § 362(c)(4)(A)(i) makes clear that "the stay under subsection (a) shall not go into effect upon the filing of the later case."

[7] *See Nelson*, 391 B.R. at 449 (rejecting similar arguments based on language from § 362(c)(3) that a stay arises in cases falling under § 362(c)(4)(A)(i)); and *Miley*, 2014 WL 11485571, at *3 (noting that courts have universally held that under § 362(c)(4)(A)(i) the automatic stay never goes into effect).

[8] Pursuant to § 362(c)(4)(D)(i)(I), the Debtor's Third Case was presumptively filed not in good faith as to all creditors as the Debtor had two or more previous cases pending under the Bankruptcy Code within a 1-year period.  The Court finds that Debtor has rebutted that presumption by clear and convincing evidence.

benefit of creditors and is prosecuting the case in good faith. As such, the Court can impose the stay "as to any or all creditors (subject to such conditions and limitations as the court may impose)…." 11 U.S.C. § 362(c)(4)(B).

The Court, however, is not convinced that it can impose the stay retroactively to the Petition Date. Under § 362(c)(4)(C), a stay imposed under § 362(c)(4)(B) "shall be effective on the date of the entry of the order allowing the stay to go into effect…." Notwithstanding that unambiguous language, Debtor asserts that § 105(a) grants the Court the authority to impose the stay retroactively to the Petition Date. At the Hearing counsel for Debtor could not cite to, and this Court's own research has failed to uncover, any authority for retroactively imposing a stay under these circumstances.

To the contrary, the Eleventh Circuit previously held that bankruptcy courts lack such authority in *In re Lashley*, 825 F.2d 362 (11th Cir. 1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988), *reh'g denied,* 485 U.S. 1016, 108 S.Ct. 1493, 99 L.Ed.2d 720 (1988). In *Lashley* the debtors' bankruptcy case was dismissed and the automatic stay terminated, following which the creditor obtained a final judgment of foreclosure from a Florida state court to conduct a foreclosure sale. The debtors appealed the dismissal of the bankruptcy and filed a motion for a stay pending appeal on the day before the foreclosure sale was to be conducted. The debtors failed to seek emergency consideration of the stay motion, and the foreclosure took place the next day without a stay in place. The bankruptcy court entered an order over a month later imposing the stay for 30 days pending appeal. The debtors filed a subsequent motion requesting the bankruptcy court amend its order to impose the stay retroactively, which the bankruptcy court denied. The district court dismissed the appeal as moot in light of the debtors' failure to timely obtain a stay, and, on further appeal, the Eleventh

9

Circuit concluded that the bankruptcy court lacked authority to retroactively impose a stay to void the foreclosure sale. "While the Bankruptcy Code grants the bankruptcy court the power to retroactively *grant relief* from a stay, 11 U.S.C. § 362(d); *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir. 1984), the court is unaware of any authority that grants the bankruptcy court power to retroactively *impose* a stay." *Id.* at 364.[9]

Debtor's arguments for retroactive relief rest exclusively on the Court's powers under §105(a). That section provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of any issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Debtor's arguments under §105 would require this Court to ignore the specific language in § 362(c)(4)(C), which explicitly states that any stay imposed under § 362(c)(4)(B) *shall* be effective on the date of the entry of the order imposing the stay. As the Supreme Court held in *Law v. Siegel*, § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code" and a bankruptcy court "may not contravene specific statutory provisions" when exercising its authority under § 105(a) or its inherent powers. 571 U.S. 415, 421, 134 S. Ct. 1188, 1194 (2014) (citing 2 *Collier on Bankruptcy* ¶ 105.01[2], p. 105–6 (16th ed. 2013)). While § 105(a) certainly allows this Court to enforce its own orders and the provisions of the Bankruptcy Code, it does not provide authority to override those same provisions. *Id.* To impose the stay at any other time besides the date

---

[9] While the Court lacks authority to retroactively impose the stay, the 11th Circuit noted that this does not mean bankruptcy courts lack equitable authority to set aside a foreclosure sale in appropriate circumstances. *Id.* at 364 n.1. *See also*, *In re Parks*, No. 04-41299-MGD, 2005 WL 6491918 (Bankr. N.D. Ga. Feb. 4, 2005). Debtor has not presented any facts which would support this Court setting aside the foreclosure sale.

10

prescribed under § 362(c)(4)(C) would require this Court to flout the express language of the Bankruptcy Code. This the Court cannot do, and Debtor's request to impose the stay retroactively to the Petition Date will be denied.

### (C) Debtor's Remaining Interest in the Property

Given that a stay cannot be imposed retroactively, the question necessarily becomes whether imposition of a stay now does anything to preserve for Debtor's bankruptcy estate any interest in the Property following the foreclosure sale? Courts addressing that question under similar—but not precisely the same factual scenario—have consistently answered "no."[10]

The underlying legal analysis of those cases generally runs along the following lines: Under Georgia law, a deed to secure debt transfers legal title to the property conveyed to the grantee, and the grantor retains equitable title with an equitable right of redemption. [11]

---

[10] *See Taylor v. Wells Fargo Bank (In re Taylor)*, 2018 WL 1267998 (Bankr. N.D. Ga. Mar. 8, 2018) (holding borrower's equitable right of redemption terminated upon crying of foreclosure sale and acceptance of bid conducted minutes before bankruptcy commenced); *21st Mortgage Corp. v. Johnson*, 2015 WL 778887 (Bankr. S.D. Ga. February 23, 2015) (holding debtor's equity of redemption terminated upon sale to highest bidder on date of foreclosure sale even though foreclosure deed not recorded before bankruptcy filing); *U.S. Bank Nat'l Ass'n v. Poole (In re Poole)*, 2015 WL 4039167 (Bankr. S.D. Ga. June 30, 2015) (holding debtor's equitable right of redemption terminated prepetition); *In re Hinson Mgmt. Grp., Inc.*, 2012 WL 2175752 (Bankr. N.D. Ga. June 8, 2012) (finding right of redemption terminated prepetition where foreclosure sale conducted 19 minutes before petition filed); *Bishop v. GMAC Mortgage*, 470 B.R. 633 (Bankr. M.D. Ga. 2011) (holding creditor did not violate automatic stay by recording deed under power executed on date of foreclosure sale conducted prepetition which terminated debtor's interest in property); *Williams v. SunTrust Bank (In re Williams)*, 393 B.R. 813 (Bankr. M.D. Ga. 2008) (holding debtor's equity of redemption terminated when the high bid is made at the foreclosure sale conducted before bankruptcy filing); *In re Dillard,* 2007 WL 521888 (Bankr. M.D. Ga. Feb. 7, 2007) (refusing to extend automatic stay to stop mortgage creditor's dispossessory action after concluding that debtor's equity of redemption expired prior to bankruptcy filing*); In re Haynes*, 2007 WL 7141218 (Bankr. N.D. Ga. Apr. 17, 2007) (holding equity of redemption terminated where foreclosure sale conducted and deed executed prepetition); *Leggett v. Morgan (In re Morgan),* 115 B.R. 399 (Bankr. M.D. Ga. 1990) (granting relief from the stay to permit eviction after concluding debtor's equity of redemption expired before bankruptcy filing); *First Nationwide Mort. Corp. v. Davis (In re Davis)*, 1998 WL 34066146 (Bankr. S.D. Ga. January 21, 1998); *Sanders v. AmSouth Mortgage Co. (In re Sanders)*, 108 B.R. 847 (Bankr. S.D. Ga. 1989) ("under Georgia law debtor's equity of redemption terminates upon sale to the highest bidder on the date the foreclosure sale is held"); *Pearson v. Fleet Fin. Ctr.* (*In re Pearson),* 75 B.R. 254, 255 (Bankr. N.D. Ga. 1985).

[11] *See Morgan,* 115 B.R. at 401 (citing *West Lumber Co. v. Schnuck*, 204 Ga. 827, 51 S.E.2d 644, 649 (1949)).

Redemption can be accomplished only by payment in full of the secured debt, and this equitable right of redemption constitutes a property right of the debtor.[12] A properly conducted foreclosure cuts off the grantor's equitable right of redemption.[13] While federal law determines whether an interest in property is property of a debtor's bankruptcy estate, the nature and extent of the interest is determined by state law.[14] Thus, while a debtor's equitable right of redemption may constitute property of the debtor's bankruptcy estate, state law controls the issue of whether a foreclosure sale has proceeded far enough to terminate that right of redemption. Based on the existing precedent of the Georgia appellate courts,[15] bankruptcy courts in Georgia have consistently concluded that a debtor's equity of redemption terminates under Georgia law at the time the foreclosure auction is held and the high bid received.[16] As counsel for Debtor pointed out at the Hearing, however, the vast majority of courts addressing that issue have done so under facts in which crying of the foreclosure sale and acceptance of the high bid took place prepetition. In those cases, commencement of the bankruptcy case and imposition of the automatic stay followed sometime thereafter but before the deed under power was recorded. As a result, the debtors' equitable rights of redemption terminated prepetition in those cases, and the debtors held no interest in the property to be included as property of the bankruptcy estate at the commencement

---

[12] *Howard v. Citizens Bank of Cochran (In re Howard)*, 351 B.R. 251, 255 (Bankr. M.D. Ga. 2006).

[13] *Morgan,* 115 B.R. at 401; *Rhodes v. Anchor Rode Condominium Homeowner's Assoc., Inc.,* 270 Ga. 139, 508 S.E.2d 648, 650 (1998); *Carrington v. Citizens' Bank of Waynesboro,* 144 Ga. 52, 85 S.E. 1027 (1915). Debtor raised no issues with respect to the conduct of the underlying foreclosure sale.

[14] *See Butner v. United States*, 440 U.S. 48, 54-55, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979); *Witko v. Menotte, (In re Witko),* 374 F.3d 1040, 1043 (11th Cir. 2004); and *Commercial Fed. Mort. Corp. v. Smith (In re Smith)*, 85 F.3d 1555, 1557-58 (11th Cir. 1996).

[15] *See In re Taylor*, 2018 WL 1267998, at *4 for a thorough analysis of existing precedent from the Georgia appellate courts, including the most recent Georgia Supreme Court opinion addressing the issue, *Tampa Inv. Grp., Inc. v. Branch Banking & Trust Co.*, 290 Ga. 724, 727, 723 S.E.2d 674 (2012).

[16] *See supra* footnote 11.

of the case.[17]

The Court found only one prior reported decision in which the debtor's equitable right of redemption became property of the debtor's bankruptcy estate and a foreclosure sale occurred post-petition. *In re Gadson*, Adv. No. 13-4063, 2013 WL 5817708 (Bankr. S.D. Ga. Oct. 29, 2013). In *Gadson*, the debtor filed a petition for relief under chapter 13, and the debtor subsequently fell behind to her mortgage lender. The court granted stay relief to allow the mortgage lender to initiate foreclosure proceedings under Georgia law. The foreclosure sale was conducted on October 1, 2013, and the property was sold at auction to the mortgage lender via a credit bid. The debtor filed an adversary proceeding that same day seeking to enjoin the mortgage lender from proceeding with the foreclosure on grounds that the debtor had a pending home loan modification which, when approved, would allow the debtor to bring her mortgage current. The bankruptcy court granted a preliminary injunction prohibiting the mortgage lender from recording its foreclosure deed pending further order of the court. Following the preliminary injunction hearing the court analyzed Georgia law to determine the point in the foreclosure process at which Debtor's equity of redemption expires under Georgia law. Citing to prior bankruptcy decisions in Georgia, the court found strong support for the conclusion under Georgia appellate authority that a debtor's equity of redemption terminates upon sale to the highest bidder on the date of the foreclosure sale even though the foreclosure deed is not recorded.[18] Applying that authority to the facts before it,

---

[17] *See supra* footnote 11.

[18] *Gadson*, at *2 (citing *Williams.* 393 B.R. at 820 and quoting *Carrington v. Citizens Bank of Waynesboro.* 85 S.E. 1027, 1028 (Ga. 1915) ("A sale under power in a security deed divests the title of the grantor, and he has no legal right several days thereafter, on tender of the amount of the debt secured by the deed to the grantee; who is purchaser at the sale, to demand a conveyance of the land or a cancellation of the security deed. Where a sale of land is made under a power contained in a security deed ... the grantor cannot defeat the purchaser's right to have the sale fully consummated, by tender of the amount of his indebtedness to the grantee before the actual execution of the deed pursuant to the terms of the sale.")).

13

the court found that the foreclosure sale, conducted in accordance with its prior stay relief order and applicable Georgia law, with a high bid accepted approximately two hours before the Court entered its preliminary injunction, had proceeded to such a point that the debtor was left with no interest in the Property at the preliminary injunction hearing. The property was not property of the estate at the time the debtor's motion for preliminary injunction was heard, and the debtor no longer had a right under state law to cure the default.[19]

This Court finds no discernable difference between the facts in *Gadson* and those presently before the Court. Here, as in *Gadson*, Debtor held an equitable right of redemption at the time he commenced his bankruptcy case. That right of redemption was property of his bankruptcy estate at the commencement of the case, as was the case in *Gadson*.[20] In both cases a foreclosure sale was conducted post-petition and a high bid accepted from the lender while no stay was in place. In both cases a request for imposition of a stay was heard after the sale was concluded but before a foreclosure deed was recorded. The only real difference was that the stay in *Gadson* was terminated by order of the bankruptcy court, whereas the stay was never operative in the present case pursuant to 11 U.S.C. § 362(c)(4)(A)(i). The Court believes that to be a distinction without a difference.

Counsel for Debtor argued at the Hearing that once Debtor's equitable right of redemption became property of Debtor's bankruptcy estate, it was thereafter protected from diminution from the estate. The obvious question is how? With no automatic stay in place to preclude creditor actions, what prevented Lender from exercising its rights under Georgia law to foreclose on the Property and terminate Debtor's equitable right of redemption? The simple answer is nothing.

---

[19] *Id.* at *2.

[20] *Commercial Federal Mortgage Corp. v. Smith, (In re Smith),* 85 F.3d 1555, 1557–58 (11th Cir. 1996).

While § 362(c)(4)(B) provides a debtor with a history of multiple recent filings the means to seek imposition of the stay, nothing in the Bankruptcy Code or Bankruptcy Rules precludes a creditor from continuing its collection efforts until a stay is imposed.[21] Consequently, this Court concludes, as so many have before, that Debtor's equitable right of redemption expired upon the conclusion of the foreclosure sale and the acceptance of the high bid by Lender.

While Debtor's equitable right of redemption was property of Debtor's bankruptcy estate at the commencement of the case, that property right expired according to Georgia law and ceased to be property of the bankruptcy estate when the foreclosure sale was concluded and the high bid accepted while no stay was in place. The fact that the equity of redemption was property of the bankruptcy estate at the commencement of the case does not change that analysis. *See In re Northington*, 876 F.3d 1302, 1314 (11th Cir. 2017) (citations omitted). As the Eleventh Circuit noted in *Northington*:

> [U]nder Section 541(a), "[t]he commencement of a case"—*i.e.*, the filing of a petition—"creates an estate," which includes, among other things, "all legal or equitable interests in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). But Section 541 neither clearly says nor unambiguously implies….that a bankruptcy estate, once created, necessarily remains static. The textual indicators, in fact, point in the opposite direction, and suggest that an estate is not necessarily "frozen in time," but rather can, in certain circumstances, expand or contract in accordance with the operation of underlying state-law property rules….
>
> Properly understood, the Bankruptcy Code takes an estate's constituent property interests as it finds them. If an asset is by its state-law nature static, then it remains so in the bankruptcy estate. If, by contrast—as is often the case—state law imbues an estate asset with a sort of internal dynamism, then that characteristic will follow the asset into the estate. Such dynamism will often (and perhaps typically) increase an estate asset's value….

---

[21] *Evans v. Premier Self Storage, LLC* (*In re Evans*), 2009 WL 1065131, at *3 (Bankr. N.D. Ala. Mar. 27, 2009) (finding that in a case subject to § 362(c)(4)(A)(i), a party may continue its state court action against the debtor until the order imposing the stay went into effect); *see Nelson*, 391 B.R. at 452 (stating that in a case subject to § 362(c)(4)(A)(i), the property of the estate is not immune to enforcement of creditor interests).

> But increase will not always be the result—sometimes the dynamism will reduce (or even eliminate) an asset's value. Think, for instance, about a debtor whose bankruptcy estate includes an option contract. If the debtor fails to exercise the option in accordance with state law, then the right to buy disappears.

*Id.* at 1314.[22] Here, Debtor's equitable right of redemption expired automatically by operation of Georgia law at the conclusion of the foreclosure sale and acceptance of the high bid. The Property thereafter ceased to be property of Debtor's bankruptcy estate. Debtor argued at the hearing that such a conclusion will result in a substantial loss of equity Debtor held in the Property which could be used to repay creditors in this case. The Court is not unsympathetic to that argument. But consequences flow from a debtor's unsuccessful prosecution of two previous bankruptcy cases, and the Court cannot bend the Bankruptcy Code to protect a debtor from the consequences of his own conduct, regardless of whether he is finally proceeding in this Third Case in good faith.

With his rights in the Property terminated under Georgia law at the conclusion of the foreclosure sale, Debtor's only remaining interest in the Property is as a tenant at sufferance.[23] As a result, the Court will not impose a stay to preclude Lender or SPS from executing or recording in the appropriate real estate records a deed under power or other appropriate documents to reflect the transfer of title of the Property to Lender. The parties, however, did not address at the Hearing or in their respective Motions whether Debtor as a tenant at sufferance has any continuing

---

[22] *Northington* involved a different property interest and different controlling law—a pawned automobile and Georgia's pawn statute—but the underlying principle as to the dynamic nature of property of the estate is equally applicable here. Much like the facts in this case, the pawned automobile in *Northington* became property of the estate but ceased to remain so upon the debtor's failure to timely redeem his interest in the automobile before that interest terminated automatically by operation of Georgia's pawn statute. Unlike the present case, the debtor's interest in the automobile terminated even though the automatic stay remained in place in *Northington*. *Id.* at 1315.

[23] *See Cloud v. Georgia Central Credit Union*, 214 Ga. App. 594, 448 S.E.2d 913, 916 (1994) (holding that after foreclosure sale former owners are tenants at sufferance subject to being dispossessed); *McKinney v. South Boston Savings Bank.* 274 S.E.2d 34, 36 (Ga. App. Ct. 1980) (same).

16

protectable interest in the Property.[24] As such, and except as set forth above in this paragraph, the Court will impose a stay effective upon entry of this order as to all creditors, including Lender, SPS, and their successors and assigns, subject to being lifted by separate order upon a proper motion establishing entitlement to such relief. Lender should address in any subsequently-filed motion for relief from the stay imposed by this order whether it should be entitled to proceed with dispossessory proceedings during the pendency of the COVID-19 pandemic. Based on the foregoing,

**IT IS HEREBY ORDERED** that the Motion to Confirm is Granted; and it is

**FURTHER ORDERED** that the Motion to Impose is Granted in Part and Denied in Part as set forth above.

The Clerk's Office is directed to serve a copy of this Order on Debtor, Debtor's counsel, and SPS.

**END OF DOCUMENT**

---

[24] *See In re Atlantic Business and Community Corp.*, 901 F.2d 325, 328 (3rd Cir. 1990) (citing *In re 48th Street Steakhouse, Inc.*, 836 F.2d 427 (2nd Cir. 1987), *cert. denied*, 485 U.S. 1035, 108 S. Ct. 1596 (1988) and holding that a debtor's possession of tenancy at sufferance creates a property interest as defined under 11 U.S.C. § 541, and is protected by 11 U.S.C. § 362); *see also In re Golden Isles Petroleum, Inc.*¸ No. 91-42239, 1993 WL 13006432 (Bankr. S.D. Ga. Jun. 10, 1993); *but see In re Taylor*, 2018 WL 1267998 at *5 n.11. (noting without citation of authority that even if debtor retained possessory interest in property after equitable right of redemption terminated, that interest would not be protected by automatic stay).